# United States Court of Appeals for the Federal Circuit

2009-1130

ORION IP, LLC,

Plaintiff-Appellee,

v.

HYUNDAI MOTOR AMERICA,

Defendant-Appellant.

Frederick S. Frei, Andrews Kurth LLP, of Washington, DC, argued for plaintiff-appellee. With him on the brief was Elizabeth A. Wiley, The Wiley Firm PC, of Austin, Texas. Of counsel on the brief were Jon E. Wright and Byron L. Pickard, Sterne, Kessler, Goldstein & Fox PLLC, of Washington, DC.

Gene C. Schaerr, Winston & Strawn LLP, of Washington, DC, argued for defendant-appellant. With him on the brief were Geoffrey P. Eaton and Jacob Loshin. Of counsel on the brief were A.M. (Russ) Meyer, Jr. and Robert P. Latham, Jackson Walker, LLP, of Dallas, Texas; and Douglas R. McSwane, Jr., Potter Minton, P.C., of Tyler, Texas.

Richard A. Samp, Washington Legal Foundation, of Washington, DC, for amicus curiae Washington Legal Foundation. With him on the brief was Daniel J. Popeo.

Appealed from: United States District Court for the Eastern District of Texas

Judge Leonard Davis

# United States Court of Appeals for the Federal Circuit

2009-1130

ORION IP, LLC,

Plaintiff-Appellee,

v.

HYUNDAI MOTOR AMERICA,

Defendant-Appellant.

Appeal from the United States District Court for the Eastern District of Texas in case no. 6:05-CV-322, Judge Leonard Davis.

_____

DECIDED: May 17, 2010
_____

Before GAJARSA, PLAGER, and LINN, Circuit Judges.

GAJARSA, Circuit Judge.

Hyundai Motor America ("Hyundai") appeals from the United States District Court for the Eastern District of Texas's (the "district court's") ruling of no unenforceability for inequitable conduct and denial of Hyundai's motion for judgment as a matter of law ("JMOL") and a new trial. The district court denied the JMOL motion by finding inter alia that (1) U.S. Patent No. 5,367,627 (the "'627 patent") was not invalid on anticipation or obviousness grounds; and that (2) it was not error (i) to instruct the jury that the critical date was November 10, 1988, (ii) to fail to instruct the jury that an inventor's own secret

commercial use could invalidate the patent under § 102(b), and (iii) to fail to explicitly instruct the jury that obviousness can be based on a single reference. We reverse the district court's denial of judgment as a matter of law on validity because there is insufficient evidence to support the jury's verdict of no anticipation. However, because the district court did not abuse its discretion in its analysis of the inequitable conduct counterclaim, we affirm the judgment of no unenforceability.

BACKGROUND

The '627 patent, styled "Computer-Assisted Parts Sales Method," claims a method for assisting a salesperson in selecting appropriate parts corresponding to a customer's particularized need using a computerized system. The invention eliminates the need for salespersons to use more cumbersome and time-consuming paper catalogs and order forms. '627 patent col.1 ll.15-50. The '627 patent teaches that when a customer requests a part, the salesperson uses an electronic system to search for the appropriate part, determines whether the appropriate part is available and how much it costs, and then provides this information to the customer. The three asserted claims of the '627 patent cover these four basic steps:

1. A computerized method of selling parts for particular equipment specified by a customer, comprising the steps of:

   a) receiving information identifying a customer's parts requirements for the equipment, comprising the step of receiving equipment application information, comprising an identification of the equipment with which one or more parts are to be used;

   b) electronically specifying information identifying a plurality of parts and specifications for the parts;

   c) gathering parts-related information for one or more parts within the plurality of parts which meets the customer's requirements,

comprising the step of electronically associating at least one of the parts within the plurality of parts with the received equipment application information; and

d) receiving the gathered parts-related information and compiling the parts-related information into a <u>proposal</u> meeting the customer's requirements.

. . . .

7. The method of claim 1 wherein the step (d) further comprises the step of including within the <u>proposal</u> price information corresponding to the one or more parts which meets the customer's requirements.

8. The method of claim 1 wherein the step (d) comprises the step of including within the <u>proposal</u> graphical information corresponding to the one or more parts which meets the customer's requirements.

'627 patent col.30 ll.4-56 (emphases added).

The inventor, Jerome Johnson, worked at a farm equipment dealership and developed a way to compile parts information into sales proposals using a computer. Mr. Johnson's company, Clear With Computers, LLC, also began to develop its own parts-sales software that eventually became known as "CASS Parts" (short for "Computer-Assisted Sales System"). CASS Parts was an embodiment of the general four-step method that would later be claimed in the '627 patent. In 2004, Orion IP, LLC ("Orion") acquired the rights to the '627 patent.

On August 30, 2005, Orion sued Hyundai and twenty other automakers, alleging that their online sales systems (here, hyundaiusa.com and hyundaidealer.com) infringed the '627 patent and another patent, U.S. Patent No. 5,615,342 (the "'342 patent"). Orion settled with all other defendants prior to trial. At trial, Hyundai alleged that it did not infringe the '627 patent and that the patent was invalid. The parties tried the case to a jury. The jury found that Hyundai infringed the '627 patent and its infringement of that patent was willful. The jury also determined that the '627 patent was not invalid and that

Hyundai did not infringe the '342 patent. The jury awarded Orion $34 million in damages for Hyundai's infringement of the '627 patent. The court augmented the $34 million in damages with pre-judgment interest, post-judgment interest, and an ongoing two-percent royalty on post-verdict parts sales. The district court directed the entry of final judgment on the verdict and denied Hyundai's post-judgment motions for JMOL or a new trial.

On JMOL, Hyundai had argued that the evidence presented to the jury established that the '627 patent was anticipated by prior art electronic parts catalogs, specifically the Bell & Howell IDB2000 system. Bell & Howell developed and sold the IDB2000 system in 1987. Under a 1987 distribution agreement between Bell & Howell and Reynolds & Reynolds, the latter distributed and supported the IDB2000 electronic parts catalog under the Reynolds & Reynolds PartsVision private label.[1] The IDB2000 system, as described in a Reynolds & Reynolds promotional publication entitled "Electronic Parts Catalog," was identified as an automated system for the sale of parts that allowed salespersons to sell parts faster and with more accuracy. The Electronic Parts Catalog promotional publication lists nine steps in the IDB2000 system. It provides an example, with illustrations, of a customer requiring a brake master cylinder for a 1986 Pontiac Grand Am. Using a touch-screen, the salesperson at the counter:

Step 1: selects the desired make—Pontiac
Step 2: selects the desired year—1986
Step 3: selects the desired model—Grand AM

---

[1] The distribution agreement was not a part of the record on appeal despite being requested at oral argument. However, it is clear from the trial transcript that it was put into evidence by Stephen Otto, a former Reynolds & Reynolds manager, who testified that he negotiated and signed the agreement. March 24, 2007 Trial Tr. at 91:23-92:17.

Step 4:   selects the desired parts group—Group 4-transmission and brake

Step 5:   selects the appropriate illustration—Illustration # 17-1985-86 "N" brake pedal and master cylinder mounting

Step 6:   selects the part call-out number—#16 cylinder, brake motor

Step 7:   At this point the PartsVision system has "found the correct part and has listed it on a shopping list. Now the counterman can find more parts or check inventory, price the part and print the invoice . . . all from the same workstation."

Step 8:   builds a shopping list, if needed

Step 9:   selects the integration function key to "display the normal inventory detail," "prices the part, and allows the counterman to complete preparation of a wholesale or retail price."

Orion challenged Hyundai's anticipation evidence on the sole basis that the IDB2000 system did not generate a customer "proposal" as required by claim 1, step (d). The district court had construed the term "proposal" to mean "information intended for conveyance to a potential customer." Orion IP, LLC v. Mercedes-Benz USA, LLC, 516 F. Supp. 2d 720, 722 (E.D. Tex. 2007) (adopting the claim construction the court issued in Orion IP, LLC v. Staples, Inc., 406 F. Supp. 2d 717, 724 (E.D. Tex. 2005)). At trial, Orion distinguished the IDB2000 system by arguing that because it generated information related to the dealer's markup and cost, as per step 9 above, it did not generate a proposal since a salesperson would not want to disclose a wholesale price to a retail customer. The district court concluded that both parties presented evidence at trial as to whether the IDB2000 system generated a "proposal," but because the jury had weighed the evidence and found the IDB2000 system did not anticipate the '627 patent, it would not reweigh the evidence.

The district court had jurisdiction under 28 U.S.C. § 1338(a), and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the denial of a motion for JMOL "under the law of the regional circuit where the appeal from the district court normally would lie." z4 Techs., Inc. v. Microsoft Corp., 507 F.3d 1340, 1346 (Fed. Cir. 2007) (applying Fifth Circuit law). The Fifth Circuit reviews a denial of JMOL de novo. Cambridge Toxicology Group, Inc. v. Exnicios, 495 F.3d 169, 179 (5th Cir. 2007). JMOL "is appropriate only if the court finds that a 'reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831, 841 (Fed. Cir. 2010) (quoting Fed. R. Civ. P. 50(a)(1) in applying Fifth Circuit law). The Fifth Circuit "describes appellate review of a JMOL denial as a determination whether 'the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable jurors could not arrive at a contrary verdict.'" Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323, 1328 (Fed. Cir. 2008) (quoting Harris Corp. v. Ericsson Inc., 417 F.3d 1241, 1248 (Fed. Cir. 2005)).

## I. No Waiver of JMOL

At the outset, we must first address the district court's determination that Hyundai waived its right to JMOL on anticipation and obviousness because it failed to make a sufficiently specific pre-submission motion under Rule 50(a). The procedural facts are undisputed. Before the case was submitted to the jury and at the close of all the evidence, counsel for Hyundai made the following motion in the middle of what seems to be a lengthy discussion regarding the jury instructions on anticipation and obviousness:

> Mr. Schaerr: Next we seek partial judgment as a matter of law based on prior art. And the Court has heard the testimony and the argument about that.

The Court:    The motion's denied.

May 25, 2007 Trial Tr. at 278:15-19.

The Fifth Circuit construes Rule 50(a) liberally, such that the adequacy of an oral Rule 50(a) motion depends in large measure on the context in which the motion is made. See Blackboard, Inc. v. Desire2Learn, Inc., 574 F.3d 1371, 1379-80 (Fed. Cir. 2009) (citing Navigant Consulting, Inc. v. Wilkinson, 508 F.3d 277, 288-89 (5th Cir. 2007)). Even a cursory motion for judgment may be sufficient where it was made "shortly after an extended discussion of the evidence relating to anticipation and obviousness, and it is clear from the context that neither the court nor [the nonmovant's attorneys] needed any more enlightenment about [the movant's] position on those issues." Id. at 1380.

Accordingly, while the statement by Hyundai's attorney alone is insufficient and cursory, it is clear from the context, including the parties' preceding arguments over jury instructions relating to anticipation and obviousness and the district judge's immediate denial of the motion, that neither the court nor Orion needed any further explanation about Hyundai's position on those issues. Id. The trial transcript indicates that the case was at a juncture where the district court had already determined that the invalidity issues presented jury questions. See May 25, 2007 Trial Tr. at 236:3-246:25; 254:1-255:17. Also, the final jury instructions contained specific, detailed instructions as to both anticipation and obviousness. Thus, neither Orion nor the district judge could have failed to understand Hyundai's position on those issues. See MacArthur v. Univ. of Tex. Health Ctr., 45 F.3d 890, 897 (5th Cir. 1995) (stating that the purpose of a Rule 50(a) motion is to alert the court to the party's legal position and to put the opposing party on

notice of the moving party's position as to the insufficiency of the evidence).  Although cursory in its content, Hyundai's request for a "partial judgment as a matter of law" was sufficient under Fifth Circuit procedure to preserve its right under Rule 50(a).

## II.    Sufficiency of the Evidence on Anticipation

We next address whether the district court erred in denying Hyundai's motion for post-verdict JMOL on anticipation in light of the prior art IDB2000 Electronic Parts Catalog promotional publication.  In our review of the denial of JMOL, we are mindful of the fact that anticipation is a question of fact that we review for substantial evidence when tried to a jury.  z4 Techs., 507 F.3d at 1347.  Under 35 U.S.C. § 102(b), a patent is invalid as anticipated if "the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United States."  Although § 102 refers to "the invention" generally, the anticipation inquiry proceeds on a claim-by-claim basis.  See Hakim v. Cannon Avent Group, PLC, 479 F.3d 1313, 1319 (Fed. Cir. 2007).

Whether a document constitutes a printed publication under § 102 is a question of law based upon the underlying facts of each particular case.  Cordis Corp. v. Boston Scientific Corp., 561 F.3d 1319, 1332-33 (Fed. Cir. 2009).  Here, to qualify as a printed publication, the Electronic Parts Catalog promotional publication must have been disseminated or otherwise made accessible to persons interested and ordinarily skilled in the subject matter to which the advertisement relates prior to the critical date.  See Kyocera Wireless Corp. v. Int'l Trade Comm'n, 545 F.3d 1340, 1350 (Fed. Cir. 2008); In re Hall, 781 F.2d 897, 899 (Fed. Cir. 1986) (explaining that public accessibility is the "touchstone in determining whether a reference constitutes a 'printed publication' bar

under 35 U.S.C. § 102(b)"). The critical date is defined as the date one year prior to the filing date of the patent application. Constant v. Advanced Micro-Devices, Inc., 848 F.2d 1560, 1568 (Fed. Cir. 1988).

The district court ruled that the '627 patent's critical date is November 10, 1988. Orion IP, LLC v. Mercedes-Benz USA, LLC, 485 F. Supp. 2d 745, 747 (E.D. Tex. 2007). The Electronic Parts Catalog reference has a copyright date of 1987 with a revision date of January 1991. On appeal, Orion argues that the Electronic Parts Catalog does not qualify as prior art because it was revised after the '627 patent's 1988 critical date. But, Stephen Otto, a former Reynolds & Reynolds manager, showed the jury the Electronics Parts Catalog reference and testified that it was produced in 1987 and that it was used, by upwards of 150 to 200 salespersons, as part of the Reynolds & Reynolds sales and demonstrative pitch for the IDB2000 system to car dealers. He testified that the reference had two purposes: (1) "to act as [a] direct mail piece to dealers to generate interest in the products," and (2) to "act[ ] as essentially a demonstration piece for our salespeople to present to dealers and dealer personnel, because the actual PartsVision system was too bulky to carry around to dealerships." He also specified that he personally demonstrated the IDB2000 system, in accordance with the nine steps outlined in the Electronic Parts Catalog reference, hundreds of times starting from late 1987. Moreover, he testified that he directed the after-sale installation of customized IDB2000 systems at the car dealerships. Orion did not rebut his testimony. Thus, the Electronic Parts Catalog promotional publication, as embodied by the IDB2000 system, qualifies as a prior art printed publication because it was accessible to those interested in the business of auto parts prior to November 10, 1988. See Iovate Health Scis., Inc.,

v. Bio-Engineered Supplements & Nutrition, Inc., 586 F.3d 1376, 1380 (Fed. Cir. 2009) (affirming summary judgment of anticipation based on a prior art advertisement disclosing a dietary supplement where the advertisement was published in a magazine that was accessible to those interested in the art of nutritional supplements).

In addition to qualifying as a printed publication, a single prior art reference must expressly or inherently disclose each claim limitation to anticipate a claim. Finisar, 523 F.3d at 1334. Additionally, the reference must "enable one of ordinary skill in the art to make the invention without undue experimentation." In re Gleave, 560 F.3d 1331, 1334 (Fed. Cir. 2009). Further, the party asserting invalidity due to anticipation must prove anticipation, a question of fact, by clear and convincing evidence. Yoon Ja Kim v. ConAgra Foods, Inc., 465 F.3d 1312, 1324 (Fed. Cir. 2006).

For purposes of the anticipation analysis, the only dispute is whether the prior art Electronic Parts Catalog reference meets the "proposal" element. See Blackboard, 574 F.3d at 1379-80 (reversing a district court's denial of JMOL on anticipation and finding the claim invalid as anticipated where the plaintiff disputed anticipation of only one limitation and this court found that the prior art taught that limitation). Step (d) of claim 1 of the '627 requires "receiving the gathered parts-related information and compiling the parts-related information into a proposal meeting the customer's requirements." The district court previously construed "proposal" to mean "information intended for conveyance to a potential customer."

At trial, Hyundai presented expert testimony, third-party fact witnesses, and documentary evidence to the jury showing that the IDB2000 system was designed to be used by salespersons to convey parts-related information directly to customers.

Hyundai's expert witness, Mr. Klausner, testified that the IDB2000 system practiced the "proposal" element of claim 1 by generating a shopping list. This shopping list, he explained, constituted the last step in the IDB2000 system, as described in step 9 of the Electronic Parts Catalog reference. He stated:

A:    . . . [A]nd we see that you can print the list, as you normally would, using your computer. And so you end up with a list of parts, with prices, with diagrams that you can actually hand to a customer, or you can show them on your screen by swiveling it around.

Also, former Reynolds & Reynolds manager, Stephen Otto, showed the jury the Electronic Parts Catalog reference depicting direct customer interaction.

Q:    And would you describe the picture that's in the upper right-hand corner.
A:    That's a picture representing a parts counterperson interacting with the consumer to identify parts.
Q:    And it looks like both the customer and the counterperson are looking at a monitor?
A:    Yes.
Q:    Could you describe any features of that monitor.
A:    Well, it was a very high-resolution graphics capable monitor that could be used by the parts counterperson or by a consumer, mechanic, by just turning the monitor and then displaying both – in this case, a line drawing of the parts assembly or simply going through the process of looking up parts in the catalog.

Mr. Otto further testified that he observed a salesperson using a customized IDB2000 system at an Acura dealership in Pasadena, California with a potential customer.

Supporting the testimony by Messrs. Klausner and Otto, former Bell & Howell executive, David Gump, testified that the commercial use of the IDB2000 system was designed to enable salespeople to convey parts-related information directly to potential customers.

Q:    How did the IDB2000 work for walk up customers . . . [?]
A:    Typical activity would be the counterperson would pull up an illustration that included what he understood the parts to be and

then turned the screen to the customer and say, "Is this what you're talking about?" Or if the customer had it in his hand, compare it to the illustration.

Q: And how would you – how would you be able to turn it to the customer?

A: One of our original requirements of the work station was it had to have tilt and swivel.

Mr. Gump was also asked to describe another promotional flyer showing the IDB2000 system in use at a counter with "walk-up" customers.

A: This is another promotional piece we developed to send to dealers.

Q: And was this also in the 1987 time frame?

A: I believe so, yes.

Q: All right. Let's go to the fourth page of that. And over on the right side where we have all these colors, can you tell the jury what's going on here, what you're trying to communicate to potential customers?

A: Well, this is suggesting to the dealership that there are multiple opportunities to use the system. Starting at the top, the retail counter, that's a must. All dealers have walk-up purchases. That's why they have the swivel on there so you could share the illustration.

Mr. Gump further testified that typically a counter salesperson would select an illustration of what he understood the part to be. Then, the salesperson would turn the screen to the customer both to provide the customer with a visual result of the search and to allow the customer to review the part and any necessary related parts. Mr. Gump also showed the jury another promotional publication entitled "Profiles in parts productivity-Bell + Howell" with a 1987 copyright containing a testimonial from a counter salesman claiming that "customers can now see the parts better than trying to lean over the counter to look in a parts catalog."

Orion offered minimal contradictory evidence regarding whether the IDB2000 system's functionality before 1988 anticipated the "proposal" element of claim 1 except to state that because the IDB2000 system showed both wholesale and retail prices, the

markup information generated could not have been "intended to be conveyed to a potential customer." Orion also introduced statements by Orion's expert witnesses, Dr. Rhyne and Donald Frey, a former CEO of Bell & Howell, that the IDB2000 system was a "back-office" look up system. In an affidavit, Mr. Frey, without making reference to the "proposal" element, testified that the IDB2000 system was intended "to be used primarily by mechanics in service bays," and not at the sales counter. These arguments have limited value in support of Orion's position relative to the anticipation issue.

First, the claim does not define what type of information is "intended for conveyance to a customer" and instead only requires that parts-related information, e.g., diagrams, price, inventory, necessary related parts, etc., is intended to be communicated to the customer as part of a potential sale. Second, price information is not required by claim 1 and is the subject of claim 7. Third, there is overwhelming documentary and testimonial evidence that the Electronic Parts Catalog reference teaches parts-related information being conveyed to a customer using the IDB2000 system in order to improve communications with customers for faster and more accurate sales by counter salespersons.

Thus, testimonial and documentary evidence regarding the Electronic Parts Catalog reference establish that the Electronic Parts Catalog reference anticipates claim 1 of the '627 patent. See Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1319-20 (Fed. Cir. 2009) (reversing a jury verdict and finding a method patent anticipated where a plaintiff tried to distinguish the prior art based on disclosed functions "in addition" to those claimed by the patent). Like the plaintiff in Exergen, Orion attempts to distinguish the IDB2000 system because it could display wholesale prices in addition to

retail prices. Such capability, however, does not prevent the Electronic Parts Catalog reference from anticipating the "proposal" element because the reference teaches the communication of other relevant parts-related information, including the retail price, to a potential customer. Id. Based on the considerable evidence, and in the absence of the "proposal" claim element limiting the type of parts-related information that was intended for conveyance to a customer, no reasonable fact-finder could reach a conclusion other than that the IDB2000 system, as described in the Electronic Parts Catalog reference, discloses the proposal element, in an enabling manner.

The evidence also required JMOL on dependent claim 7 that states the additional element of "price information." It is undisputed that the IDB2000 system generated price information; the only question was whether the price information was "intended for conveyance to a customer" because it revealed a markup. Again, the claim did not specify what type of price information was intended for conveyance to a customer. It is unquestionable that wholesale customers would be interested in the wholesale price as well as the retail price. Moreover, any salesperson would have known the advantages of conveying only the retail price to a retail customer.

With regards to dependent claim 8 that requires "graphical information," because steps 7 and 9 of the IDB2000 system required selecting appropriate illustrations and the Electronic Parts Catalog reference showed large screen shots of part diagrams as examples, it is clear that the IDB2000 system allowed both the customer and the salesperson to see graphical information. Therefore, dependent claims 7 and 8 are also anticipated by the Electronic Parts Catalog reference.

Here, Hyundai showed by clear and convincing evidence that as of November 1988, the IDB2000 system, as taught by the Electronic Parts Catalog reference, generated proposals for customers including price and graphical information. Thus, the record reveals that a reasonable jury would not have a legally sufficient evidentiary basis to find that the claims at issue were not anticipated.[2]

Hyundai also contends that the '627 patent is anticipated under the § 102(b) on-sale bar based on the alleged public use or sale of the '627 patent's commercial embodiment, CASS Parts, at a parts fair in New Orleans, Louisiana from November 10-12, 1988. Because we conclude that the Electronic Parts Catalog reference constitutes an anticipatory printed publication, we need not decide whether the invention also violated the § 102(b) on-sale bar.

### III. No Clear Error on Inequitable Conduct

Finally, we turn to Hyundai's appeal of the district court's determination that Hyundai failed to establish inequitable conduct. To prove inequitable conduct, Hyundai must provide clear and convincing evidence of (1) affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information and (2) an intent to deceive the United States Patent and Trademark Office ("PTO"). Impax Labs., Inc. v. Aventis Pharm. Inc., 468 F.3d 1366, 1374 (Fed. Cir. 2006). Where a judgment regarding inequitable conduct follows a bench trial, as it did here, we review the district court's findings on the issues of materiality and intent for

---

[2] Also, the asserted claims of the '627 patent were the subject of an ex parte reexamination proceeding, initiated by a third party. In a Final Office Action dated May 5, 2009, the U.S. Patent and Trademark Office rejected the claims as anticipated by prior art references, not overlapping with the prior art raised by Hyundai in this action. The status of the reexamination proceeding, or any subsequent appeal, is unclear from the USPTO Public Pair website.

clear error. Id. at 1375. The ultimate decision regarding inequitable conduct is reviewed for abuse of discretion. Id.

At trial, Hyundai attempted to prove that before the critical date (1) the '627 patent's commercial embodiment, CASS Parts, was in public use at a parts fair and (2) that Mr. Johnson's company, Clear with Computers, had licensed the invention to Case-1H to develop the CASS Parts software. Hyundai claimed that these alleged on-sale bar activities conflicted with Mr. Johnson's sworn affidavit to the PTO that the invention had not been in public use or on sale before the critical date. The affidavit was submitted in response to the examiner's inquiry regarding on-sale activity relating to CASS Parts. But the district court addressed these arguments in a well-reasoned opinion. The district court rejected the materiality of both the license and the public use activity at the parts fair, and found no evidence that Mr. Johnson considered the pre-critical date activities material but chose not to disclose them anyway. We agree.

The district court did not clearly err by finding that the Case-1H agreement and the parts fair were not material given the evidence showing that the invention was not ready for patenting until after the critical date. After weighing the evidence, the court credited Mr. Johnson's testimony, which it described as "very believable" and "candid, straight-forward and very credible." The court found that while "Clear With Computers wanted to promote CASS Parts at the Parts Fair, the evidence does not show that they had reduced the invention to practice or that there were drawings or descriptions or other materials that would allow one skilled in the art to produce or perform the invention at the time of the Parts Fair." Likewise, with respect to the agreement between Clear With Computers and Case-1H to license and develop CASS Parts, the

court found "the agreement did not constitute a license or a sale as the invention did not even exist at the time."

The district court also did not clearly err in finding no deceptive intent based on the pre-critical date activities alone. Rather, there must be clear and convincing evidence of "culpable" conduct. Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1443 (Fed. Cir. 1991). Nor could the district court have conclusively inferred an intent to deceive based upon the allegedly conflicting statement to the PTO. To make an inference of intent to deceive, the inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard. See Scanner Techs. Corp. v. ICOS Vision Sys. Corp., 528 F.3d 1365, 1376 (Fed. Cir. 2008). Here, the court found Mr. Johnson truthfully stated to the PTO that the invention was not on sale or in public use before the critical date, despite weak evidence of pre-critical date activity, because from Mr. Johnson's perspective, the agreement and the parts fair did not entail the actual invention. Because Hyundai failed to establish threshold levels of either materiality or intent to deceive, the district court did not abuse its discretion in finding that Mr. Johnson did not engage in inequitable conduct. Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed. Cir. 2008) ("If a threshold level of intent to deceive or materiality is not established by clear and convincing evidence, the district court does not have any discretion to exercise and cannot hold the patent unenforceable regardless of the relative equities or how it might balance them.").

CONCLUSION

Because we conclude that claims 1, 7, and 8 are anticipated as a matter of law, the judgment that these claims are valid is reversed and no new trial is warranted. Given our holding, we need not reach Hyundai's remaining validity arguments presented on appeal. We affirm the district court's ruling that the '627 patent is not unenforceable due to inequitable conduct. Accordingly, the remainder of the district court's judgment is vacated, including the damages award.

<u>REVERSED-IN-PART, AFFIRMED-IN-PART, AND VACATED-IN-PART</u>

No costs.