NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

---

**JOOVY LLC AND ALBERT T. FAIRCLOUGH,**
*Plaintiffs-Appellants,*

**v.**

**TARGET CORPORATION,**
*Defendant-Cross Appellant.*

---

2010-1323, -1351

---

Appeals from the United States District Court for the Northern District of Texas in case no. 06-CV-0616, Judge W. Royal Furgeson.

---

Decided: August 5, 2011

---

PAUL V. STORM, Storm LLP, of Dallas, Texas, argued for plaintiffs-appellants. With him on the brief was SARAH M. PAXSON.

R. TREVOR CARTER, Baker & Daniels LLP, of Indianapolis, Indiana, argued for defendant-cross appellant. With him on the brief were DANIEL M. LECHLEITER, ANDREW M. MCCOY and BRANDON S. JUDKINS.

---

Before RADER, *Chief Judge*, LINN and PROST, *Circuit Judges*.

LINN, *Circuit Judge*.

Plaintiff-Appellant, Joovy LLC ("Joovy"), sued Defendant-Appellee and Cross-Appellant, Target Corporation ("Target"), in the United States District Court for the Northern District of Texas alleging infringement of U.S. Patent No. 5,622,375 ("'375 Patent"). Target moved for judgment as a matter of law ("JMOL") that claim 1 of the '375 Patent is invalid and that the '375 Patent is unenforceable due to inequitable conduct. The district court denied JMOL of invalidity but granted JMOL of unenforceability due to inequitable conduct. *Joovy LLC v. Target Corp.*, No. 06-616-F, slip op. at 16 (N.D. Tex. Apr. 8, 2010). Joovy appeals and Target cross-appeals. Because the '375 Patent is anticipated as a matter of law under the proper claim construction of "rear wheels," this court reverses the district court's denial of Target's motion for JMOL of anticipation. Further, for the reasons set forth below, this court vacates the district court's JMOL of unenforceability.

## I. BACKGROUND

### A. The '375 Patent

On April 22, 1997, the United States Patent and Trademark Office ("PTO") issued the '375 Patent to Albert Fairclough ("Fairclough"). The object of Fairclough's invention was "to provide a novel form of push-chair which is capable of carrying a second child" on a "platform provided at its lower rear." '375 Patent, col. 1, ll. 47-52. Representative claim 1 covers:

1. A push-chair for transporting a first child and a second child, comprising:

*a frame to which is attached front and rear wheels* and a seat for the first child;

*a platform* on which the second child can stand *disposed at a lower rear position on the frame and including a substantially unobstructed trailing edge, the rear wheels being mounted adjacent the trailing edge of the platform*; and

means for mounting the seat to the frame at a position substantially forward of the platform;

wherein a substantially unobstructed space is formed above the platform and behind the seat, and whereby the second child can step onto and off the platform.

*Id.* at col. 5, l. 24–col. 6, l. 4 (emphases added).

**Fig. 1 ('375 Patent)**



Fairclough hired European patent attorney, Michael Harman ("Harman"), to file an international patent application under the Patent Cooperation Treaty ("PCT"). Harman associated United States patent counsel Lowe, Price, LeBlanc & Becker (the "Lowe firm") to file the United States patent application preceding the '375

Patent ("'375 Application") in the PTO.  The PTO examiner originally rejected the '375 Application as anticipated by U.S. Patent Nos. 3,061,028 ("Konar") and 2,917,316 ("Gill"), both of which disclose a stroller with a platform that accommodates a basket.  To overcome the rejection, Fairclough amended claim 14—issued as claim 1—to require the platform of the stroller to have: (1) "a substantially unobstructed trailing edge" with "rear wheels mounted adjacent the trailing edge"; and (2) "a substantially unobstructed space [] above the platform and behind the seat."  PTO App. No. 08/307,703, Amendment, (Nov. 22 1994).  These modifications distinguished Fairclough's invention from Konar and Gill by requiring the platform of the stroller to be able to accommodate a standing child.

Another reference, German Patent No. G9109676.6 ("Königer"), was disclosed to the PTO as part of the PCT International Search Report.  Harman wrote to Fairclough that because Königer was "concerned with providing a platform for a second child to stand at the rear, [he] though it [was] necessary to obtain a full translation, so that [they could] see precisely what it disclose[d]."  *Joovy*, No. 06-616-F, Ex. 76, at 2.  Harman obtained an unofficial translation for their "own understanding."  *Id.*  No translation of Königer was provided to the PTO, and the prosecution history indicates that the PTO examiner did not consider Königer in examining the '375 Application.

On April 29, 1996, during the United States prosecution, Fairclough's exclusive licensee, Baby Trend, received a cease and desist letter from Nancy Dronyk regarding Canadian Patent No. 2,033,896 ("Dronyk"), entitled "Platform Attachment for a Stroller."  *See* fig.2.

**Fig. 2 (Dronyk)**



Baby Trend brought the letter to Fairclough's attention, and Fairclough obtained a copy of Dronyk. Fairclough subsequently provided a letter to Baby Trend stating that his invention "does not infringe in any way on [Dronyk]" because, *inter alia*, it "pertains to a small trailer to be hooked on to the rear axle of existing strollers and is towed . . . ." *Joovy*, No. 06-616-F, Ex. 869. Fairclough further told Baby Trend: "To the best of my knowledge, to date there appears no prior art that may prevent the grant of patent on my invention." *Id.* It is disputed whether Fairclough gave Harman a copy of Dronyk; however, Harman was certainly aware of Dronyk because, on June 5, 1996, he wrote in a letter to Fairclough: "I assume that we have had no reply from Dronyk to your letter of the 11th May. The ball is in her court, and I don't think we need to do anything more unless she comes back to us." *Id.*, Ex. 30. Neither Fairclough nor Harman disclosed Dronyk to the Lowe Firm or to the PTO during the '375 Patent prosecution.

## B. Procedural History

On April 6, 2006, Joovy sued both Baby Trend and Target in the United States District Court for the Northern District of Texas, alleging that Baby Trend infringed the '375 Patent by selling Sit-N-Stand® strollers to Target—which in turn sold them to customers—after Fairclough discontinued Baby Trend's license in August 2004. On October 9, 2009, Baby Trend filed a Voluntary Chapter 11 Petition in the United States Bankruptcy Court for the Central District of California. *In Re: Baby Trend, Inc.*, No. 09-34090-BB, 2010 WL 4689566 (Bankr. C.D. Cal. Feb. 25, 2010). On November 17, 2009, the district court severed Baby Trend from the action below into a separate action, *Joovy LLC v. Baby Trend Inc.*, No. 09-2012-F (N.D. Tex. filed Oct. 22, 2009), which is stayed pending the resolution of the bankruptcy proceedings.

At the district court, Target acknowledged that it infringed claim 1 of the '375 Patent, but rather defended on the grounds of invalidity and unenforceability due to inequitable conduct. Following trial on those issues, the jury returned a verdict that claim 1 of the '375 Patent was neither anticipated nor obvious, but rendered an advisory verdict that the '375 Patent was acquired through inequitable conduct. Target filed a post-verdict motion for JMOL that claim 1 is invalid as anticipated and as obvious and that the '375 Patent is unenforceable due to inequitable conduct. On April 8, 2010, the district court denied Target's motion for JMOL of anticipation and obviousness, but granted Target's motion for JMOL of inequitable conduct. Joovy appeals and Target cross-appeals. This court has jurisdiction over both appeals pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Invalidity

### 1. Standard of Review

This court reviews the denial of a motion for JMOL under the law of the regional circuit. *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 973 (Fed. Cir. 2010). "The Fifth Circuit reviews a denial of JMOL de novo" and determines "whether the facts and inferences point so strongly and overwhelmingly in favor of one party that . . . reasonable jurors could not arrive at a contrary verdict." *Id.* (internal citation omitted). "In our review of the denial of JMOL, we are mindful of the fact that anticipation is a question of fact that we review for substantial evidence." *Id.* at 974. Claim construction is a question of law that this court reviews de novo. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed.Cir.1998) (en banc).

## 2. Claim Construction of "Rear Wheels"

Target contends that the district court erred in construing "rear wheels" in claim 1 to mean "rear wheels of the push-chair." Target argues that the context of the other limitations in claim 1 imposes two criteria on "rear wheels": they must be "(1) 'attached' to the 'frame' of the stroller and (2) 'mounted adjacent the trailing edge of the platform.'" Cross-Appellant Br. 50. According to Target, "just as in [*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)], the intrinsic evidence does not support a 'restrictive definition' of 'rear wheels' that includes the modifier 'of the push-chair,' and the ordinary meaning of the term—'rear wheels' means 'rear wheels'—must govern here, limited only by the [] criteria imposed by Claim 1." *Id.* at 53.

Joovy counters that it is clear from the claim language that "rear wheels" means "rear wheels of the push-chair." According to Joovy, "[b]ecause the 'push-chair [of claim 1] . . . comprise[s] . . . rear wheels,' those wheels are necessarily the 'rear wheels of the push-chair'" and not the rear wheels on any attached platform. Appellant Resp. & Reply Br. 22. Joovy also contends that "[a]ll of the references to 'rear wheels' throughout the specification clearly denote that the referenced 'rear wheels' are the 'rear wheels' of the push-chair." *Id.* at 23. Finally, relying on *Rexnord Corp. v. Laitram Corp.*, Joovy contends that this court must construe "rear wheels" in claim 1 consistently with its meaning in dependent Claim 6. 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent."). Joovy argues that Claim 6 requires the rear wheels to be a part of the push-chair.

This court disagrees with Joovy's argument, which is contradicted by the words of the claim itself. Claim 1

recites, *inter alia*, (1) "a frame to which is attached front and rear wheels," and (2) "a platform . . . , the rear wheels being mounted adjacent the trailing edge of the platform." '375 Patent, col. 5, l. 24-col. 6, l. 2. The limitations in claim 1 require the rear wheels to be *attached* to the frame of the push-chair by means of a platform at a "lower rear position on the frame." *Id.* col. 5, l. 29. Similarly, the specification indicates that the rear wheels are mounted near the frame, *id.* col. 2, l. 49, at the trailing edge of the platform, *id.* col. 1, ll. 51-52. Thus, the claim language and specification indicate that the rear wheels of claim 1 must be attached to the frame of the push-chair via the platform of the push-chair, with no suggestion that the rear wheels must be part of the push-chair as distinct from the platform. Nothing recited in dependent Claim 6, which calls for the rear wheels to accommodate "a lever operated braking mechanism" that is "located forward of axles of the rear wheels" and "coupled" to the push-chair via a "coupling rod," changes that conclusion. *Id.* col. 6, ll. 23-27. The objective of Claim 6—attaching a braking mechanism from the push-chair to the rear wheels—"should not be read restrictively to require that the [rear wheels] in each case serve all of the recited functions." *Phillips*, 415 F.3d at 1327. The term "rear wheels" may be construed consistently in both Claims 1 and 6 to mean "rear wheels," limited only by the specific attachment and mounting requirements found in the claims themselves. This construction squarely comports with the general requirement that claim terms be construed consistently throughout a patent. *See Rexnord*, 274 F.3d at 1342.

Accordingly, this court holds that the district court erred in importing the modifier "of the push-chair" into the definition of the term "rear wheels" in claim 1.

### 3. Anticipation

Target contends that, under the proper claim construction, Dronyk discloses each and every element of claim 1: "(1) rear wheels that are (2) 'attached' to the 'frame' of the stroller and (3) 'mounted adjacent the trailing edge of the platform.'" Cross-Appellant Br. 56. Joovy counters that, under the district court's claim construction, the jury considered the evidence and "determined that it did not believe that the castor wheel 40 of the platform attachment in Dronyk magically becomes a rear wheel of the stroller/push-chair just because the platform is attached to the back of the stroller." Appellant Resp. & Reply Br. 30. Joovy does not argue whether a reasonable juror could reach this same conclusion if instructed that "rear wheels" meant "rear wheels."

This court holds that under the proper claim construction of "rear wheels," Dronyk unquestionably discloses each and every element of claim 1 and, thus, anticipates the claims under 35 U.S.C. § 102(b) as a matter of law. Dronyk discloses a stroller with "rear wheels 26 [] mounted on a common transverse axle 30" and "a castor wheel 40 mounted on the platform, towards the back." Dronyk at 6, ll. 17-18; 7, l. 9; *see* fig.2. Dronyk further discloses that, "where desired, additional castors may be installed for stability purposes." *Id.* at 7, ll. 24-25. When the term "rearwheels" is not limited to "rear wheels of the push-chair," there can be no dispute that the castor wheels disclosed in Dronyk meet the disputed limitation in claim 1: They are (1) "wheels" at the "rear," i.e., "rear wheels"; (2) they are "attached to the frame" via the platform; and (3) they are "mounted adjacent the trailing edge of the platform."

This court therefore reverses the district court's denial of Target's motion for JMOL on the issue of anticipation and holds as a matter of law that claim 1 of the '375

Patent is invalid as anticipated. In light of this holding, we need not address Target's contention that claim 1 of the '375 patent is obvious.

## B. Inequitable Conduct

Because the district court held that the '375 Patent was unenforceable due to inequitable conduct prior to this court's decision in *Therasense, Inc. v. Becton, Dickinson, & Co.*, ___ F.3d ___, 2011 WL 2028255 (Fed. Cir. May 25, 2011) (en banc), and because Target explicitly waived remand to the district court to decide the issue of inequitable conduct in the event that this court holds, as we now have, that claim 1 of the '375 Patent is invalid, oral arg. at 17:15-19:43, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/all/joovy.html, this court vacates the district court's JMOL of unenforceability.

## III. CONCLUSION

For the foregoing reasons, this court reverses the district court's denial of Target's motion for JMOL on the issue of anticipation of claim 1 of the '375 Patent and vacates the district court's JMOL that the '375 Patent is unenforceable due to inequitable conduct.

**REVERSED-IN-PART AND VACATED-IN-PART**

COSTS

Each party shall bear its own costs.