NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CUMMINS-ALLISON CORP.,**
*Plaintiff-Cross-Appellant,*

v.

**SBM CO., LTD.
(FORMERLY KNOWN AS SHINWOO
INFORMATION & TELECOMMUNICATIONS CO.,
LTD.),**
*Defendant-Appellant,*

**and**

**AMRO-ASIAN TRADE, INC.,**
*Defendant-Appellant.*

---

2011-1049, -1065, -1066

---

Appeals from the United States District Court for the Eastern District of Texas in case   no. 07-CV-0196, Judge Ron Clark.

---

Decided: May 25, 2012

---

EDWARD L. FOOTE, Winston & Strawn, LLP, of Chicago, Illinois, argued for plaintiff-cross appellant. With

him on the brief were SCOTT J. SZALA and PETER C. MCCABE. Of counsel on the brief were STEPHEN G. RUDISILL and DAVID C. MCKONE, Nixon Peabody, LLP, of Chicago, Illinois. Of counsel was BRADLEY M. TAUB.

KEVIN M. O'BRIEN, Baker & McKenzie, LLP, of Washington, DC, argued for defendant-appellant SBM CO., LTD. With him on the brief were KEVIN J. SULLIVAN; and W. BARTON RANKIN, of Dallas, Texas.

GRANT E. KINSEL, Perkins Coie, LLP, of Los Angeles, California, argued for defendant-appellant, Amro-Asian Trade, Inc. With him on the brief were MICHAEL J. SONG; and DAN L. BAGATELL, of Phoenix, Arizona.

---

Before RADER, *Chief Judge*, LOURIE and REYNA, *Circuit Judges*.

REYNA, *Circuit Judge*.

Cummins-Allison Corporation ("Cummins-Allison") sued SBM Company, Ltd. ("SBM") and Amro-Asian Trade, Inc. ("Amro") (collectively, "Defendants-Appellants") in the United States District Court of the Eastern District of Texas.[1] Cummins-Allison alleged infringement of U.S. Patent Nos. 6,459,806 ("the '806 Patent"), 5,966,456 ("the '456 Patent"), 5,909,503 ("the

---

[1] SBM is a Korean corporation that manufactures the accused currency denominator devices. Amro imports SBM products into the United States, including the accused devices, and distributes them via a group of U.S.-based distributors. Cummins-Allison is an Illinois-based company that manufactures the currency denominator devices and is owner of the patents-at-issue.

'503 Patent"), and 6,381,354 ("the '354 Patent"), which relate to currency denomination and counterfeit detection.

A trial was held, and the jury concluded that the asserted claims of the patents-at-issue were valid and that the claims of the '503 and '354 patents were infringed. In response to the parties' post-trial challenges to the verdict, the district court denied their motions for the most part but granted judgment as a matter of law ("JMOL") as to the invalidity of Claim 41 of the '456 Patent.[2] The district court also held that Claim 55 of the '354 Patent was not entitled to an earlier priority date and was invalid as anticipated by the JetScan 4062.

In this appeal, the parties challenge several of the district court's infringement and invalidity holdings, and Amro and SBM claim that the damages award should be set aside. We uphold the damages award and affirm the district court's denial of JMOL as to the validity of the asserted claims of the '806 and '503 patents and the infringement of Claim 15 of the '503 Patent. However, we reverse the district court's grant of JMOL of anticipation of Claim 55 of the '354 Patent because substantial evidence supported the jury's verdict. We have considered the parties' other arguments made on appeal and find that they provide no basis for relief.

I.

BACKGROUND

This case concerns currency denominators, which are used to discriminate between different currency denominations (*e.g.*, $1 versus $5 bills) and to count the value of a stack of currency with mixed denominations. The '806

---

[2]    The '456 Patent is not at issue in this appeal.

Patent claims a method of denominating mixed currency bills, transporting them from an input receptacle to an output receptacle, and reporting the total value of the currency. The '503 Patent relates to authentication sensors used in counterfeit detection. The '354 Patent claims a "currency identification system [that] identifies currency bills of different denominations of a plurality of currency systems." A1276.

Cummins-Allison sued SBM and Amro, alleging infringement. A trial was held from September 28, 2009, through October 7, 2009. SBM and Amro did not contest infringement as to the asserted claims of the '806 and '456 patents but moved for JMOL of invalidity. The jury found that Claim 15 of the '503 Patent was literally infringed and Claim 55 of the '354 Patent was infringed under the doctrine of equivalents ("DOE"), but that none of the claims of any of the patents-at-issue had been willfully infringed. The jury further concluded that none of the asserted claims of the '456 and '806 patents were invalid as obvious. The jury found that Claim 55 of the '354 Patent was not invalid as anticipated by the JetScan 4061 or JetScan 4062 and that Claim 15 of the '503 Patent was not invalid for obviousness. The jury awarded Cummins-Allison $11,898,279 million in damages plus interest and a reasonable royalty per unit of $400.

After the trial concluded, the parties filed motions, including motions for JMOL, challenging the verdict. In its Revised Memorandum and Order, the district court addressed and disposed of the various motions. Only those motions and related holdings pertinent to the instant appeal are discussed herein.

*'806 Patent*

The district court denied Defendants-Appellants' motions for JMOL as to the infringement of Claims 58, 85,

and 120 of the '806 Patent because "Defendants did not dispute that the accused devices practice the methods claimed in claims 58, 85, and 120." A31. It also denied a motion for JMOL that those claims are invalid as obvious.

*'503 Patent*

Defendants-Appellants moved for JMOL that Claim 15 of the '503 Patent was not infringed on the grounds that Cummins-Allison failed to present sufficient evidence that the accused products included Claim 15's "means for comparing" limitation. With regard to that limitation, the parties agreed:

> This element is a means-plus-function element to be construed under 35 U.S.C. § 112, ¶ 6.
>
> Function: "comparing, for each type of characteristic information, said respective output signal to corresponding reference information associated with the one of said plurality of sensitivity settings selected by said means for selecting for said type of characteristic information."
>
> The corresponding structure is the microprocessor 12 executing at least one of the algorithms described in column 12, line 41 through column 13, line 9, and column 18, line 45, through column 19, line 67.

A32.

In denying Defendants-Appellants' motion for JMOL, the district court observed that under § 112, ¶6, the claim would cover the structure and its equivalents and emphasized that Defendants-Appellants did not dispute that the accused products perform the "means for comparing" function. As the district court explained, Defendants-

Appellants agreed to the claim construction even though it referenced a sizable portion of the specification for the corresponding structure and only required that the "means for comparing" function be performed by one of the algorithms described in the agreed-upon portion. For those reasons and others stated on the record, the district court denied the motion.[3]

*'354 Patent*

Amro and SBM moved for JMOL that Claim 55 of the '354 Patent is not infringed by the accused products on the ground that Cummins-Allison did not present sufficient evidence from which a jury could have found that the accused products include Claim 55's "signal processing means" limitation. The parties agreed to construe this limitation as follows:

> This element is a means-plus-function element to be construed under 35 U.S.C. §112, ¶6.

> Function: "comparing said retrieved characteristic information with master characteristic information associated with at least one genuine bill; said signal processing means generating an indication of the denomination of said bill based on said comparison when said retrieved characteristic information sufficiently matches said master characteristic information."

> The corresponding structure is "a CPU programmed to carry out the correlation algo-

---

[3]    The district court also denied Cummins-Allison's motion for JMOL that Claim 15 is valid as moot given the jury's finding of validity for the '503 Patent.

> rithm disclosed in the specification to com-
> pare the scanned signal samples, or scanned
> patterns, from the unknown bills with the
> stored master characteristic pattern."

A33-34.

In denying the motion, the district court held that there was sufficient evidence to support the jury's conclusion that the differences between the "correlation algorithm" described in the specification of the '354 Patent and the one performed by the accused devices are insubstantial and therefore, that the algorithms performed are equivalent.

Amro and SBM also moved for JMOL that the effective priority date of Claim 55 of the '354 Patent was May 12, 1998 -- the filing date of the application that issued as the '354 Patent. The '354 Patent is a continuation of application No. 08/399,854 ("the '854 Application") filed on March 7, 1995, which issued as U.S. Patent No. 5,875,259 ("the '259 Patent"). The '354 and '259 patents share a common specification and contain some identical drawings. Cummins-Allison argued that Claim 55 is entitled to the earlier priority date of March 7, 1995, based on the filing date of the '854 Application. The district court found that Claim 55 is not entitled to an earlier priority date and granted the motion.[4]

Cummins-Allison moved for JMOL that the JetScan 4062 is not prior art to Claim 55 of the '354 Patent, but the district court denied the motion because the JetScan 4062 was introduced into the market in November 1994.

---

[4] The district court denied Defendants-Appellants' motion for JMOL that Claim 55 of the '354 Patent is invalid as anticipated by the JetScan 4061.

Because the district court had already held that Claim 55's effective priority date was its actual filing date -- May 12, 1998 -- it likewise concluded that the JetScan 4062 is prior art because it was in public use or on sale in the United States more than one year prior to the '354 Patent's priority date.

Amro and SBM moved for JMOL that Claim 55 of the '354 Patent is invalid as anticipated by the JetScan 4062. The district court granted the motion and denied Cummins-Allison's cross-motion because of its earlier rulings that Claim 55's effective priority date was May 12, 1998, and that the JetScan 4062 is prior art, and because it found that Cummins-Allison had conceded that the JetScan 4062 is within the scope of Claim 55 of the '354 Patent.[5]

In sum, the district court denied Defendants-Appellants' motions for JMOL as to the '806 and '503 Patents but held that Claim 55 of the '354 Patent was not entitled to an earlier priority date and was, therefore, invalid as anticipated by the JetScan 4062. The district court entered judgment on the verdict and the jury's damages award because the parties agreed that the invalidity of the asserted claims of the '354 and '456 patents did not alter the measure of damages. Cummins-Allison moved the Court to reconsider its holding that Claim 55 of the '354 Patent was not entitled to an earlier priority date and therefore, was invalid as anticipated, but the district court denied the motion.

---

[5]   The district court also addressed and resolved various motions relating to the '456 Patent, but those motions are not discussed herein because the '456 Patent is not before us in this appeal.

This appeal followed and presents various questions, which we have consolidated and summarized as follows: (i) whether the district court properly denied Defendants-Appellants' challenges regarding the validity of the asserted claims of the '806 and '503 patents; (ii) whether the district court properly upheld the jury's verdict relating to the infringement of Claim 15 of the '503 Patent; (iii) whether the damages award should be set aside; and (iv) in a cross-appeal, whether the district court erred in granting JMOL of invalidity by anticipation of Claim 55 of the '354 Patent.

As illustrated above, the district court addressed a large number of issues many of which are challenged in this appeal. We have no reason to disagree with the district court with respect to most of the issues on appeal in which it applied the law correctly or reached conclusions that are not subject to significant challenge. Therefore, we focus our analysis below solely upon whether the district court erred in granting JMOL of invalidity by anticipation of Claim 55 of the '354 Patent.

II.

DISCUSSION

A.  Standard of Review

The Court has jurisdiction under 28 U.S.C. § 1295(a)(1). In reviewing the grant or denial of a motion for JMOL, we apply the standards of the regional circuit, here, the Fifth Circuit. *See Therasense, Inc. v. Becton, Dickinson, & Co.*, 593 F.3d 1325, 1330 (Fed. Cir. 2010). Under Fifth Circuit law, the grant of JMOL is reviewed *de novo. Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 973 (Fed. Cir. 2010). JMOL should be granted "if, after considering all the evidence in the light [favorable to] and with all reasonable inferences most favorable to the party

opposed to the motion, the facts and inferences point so strongly and overwhelmingly in favor of one party that the court concludes that reasonable jurors could not arrive at a contrary verdict." *Western Union Co. v. Moneygram Payment Sys., Inc.,* 626 F.3d 1361, 1367 (Fed. Cir. 2010).

JMOL is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "In determining whether a reasonable jury would have a legally sufficient evidentiary basis for the facts as found, we must presume that the jury resolved all factual disputes in favor of the prevailing party, and we must leave those findings undisturbed so long as substantial evidence supports them." *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1358 (Fed. Cir. 2011).

Anticipation under 35 U.S.C. § 102 is a question of fact, and a jury determination of anticipation is reviewed for substantial evidence. *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1343 (Fed. Cir. 2012); *3M v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002). Substantial evidence, however, requires more than a mere scintilla; rather, it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000) (citation omitted). The court must review the record as a whole, but the mere fact that it may be possible to draw two inconsistent conclusions from the record does not lead to the conclusion that substantial evidence does not support the jury's determination. *Id.*

## B. Analysis

Defendants-Appellants argue that the effective priority date of Claim 55 of the '354 Patent was May 12, 1998 –

the filing date of the '354 Patent Application. Cummins-Allison contends that Claim 55 is entitled to a priority date of March 7, 1995 -- the filing date of the '854 Application of which the '354 Patent is a continuation. An invention is invalid as anticipated if it "was in public use or on sale in the United States more than one year prior to the date of the patent application." 35 U.S.C. § 102(b). The JetScan 4062 was on sale in the United States as of November 1994. Therefore, if the '354 Patent is entitled to the March 1995 priority date, then Claim 55 cannot be invalid as anticipated by the JetScan 4062. 35 U.S.C. § 102(b). The district court granted Defendants-Appellants' motion for JMOL because it found that Claim 55 had a priority date of May 12, 1998, and that, therefore, it was anticipated by the JetScan 4062.

A claim is entitled to priority from the filing date of an earlier filed application, but only if the earlier filed application describes the subject matter of the claim as required by § 112. 35 U.S.C. § 120. Section 112 requires a patent specification to contain a "written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same." 35 U.S.C. § 112. Thus, if the later filed application's claims are not set forth in the earlier filed application with the specificity that § 112 requires, the later filed application cannot claim the earlier filing date for those claims. 35 U.S.C. § 120.

Compliance with the written description requirement is a question of fact. *See Ariad Pharms., Inc.* v. *Eli Lilly & Co.,* 598 F.3d 1336, 1351 (Fed. Cir. 2010) (*en banc*). To satisfy the written description requirement, a patent's specification must reasonably convey to a person having ordinary skill in the art that the inventor had possession

of the later-claimed subject matter as of the earlier filing date. *Id.* While the earlier filed application need not describe the later filed claims verbatim, a description that merely renders the later filed invention obvious is insufficient. *Id.* at 1352.

In proper circumstances, drawings alone may provide an adequate written description under § 112 if they describe what is claimed and convey to those of skill in the art that the patentee actually invented what is claimed. *Cooper Cameron Corp. v. Kvaerner Oilfield Prods.,* 291 F.3d 1317, 1322 (Fed. Cir. 2002) (internal citation omitted); *see also Vas-Cath, Inc. v. Mahurkar,* 935 F.2d 1555, 1563 (Fed. Cir. 1991). In cases involving dimensions, the test is whether one skilled in the art could derive the claimed dimensions from the patent's disclosure. *Vas-Cath*, 935 F.2d at 1566 (citation omitted).

Claim 55 of the '354 Patent was entitled to the March 1995 priority date from the filing of the application for the '259 Patent only if the earlier specification satisfied the written description requirement as to Claim 55. 35 U.S.C. § 120. Here, the application that issued as the '354 Patent was filed on May 12, 1998, and issued as the '354 Patent on April 30, 2002. Cummins-Allison asserted only Claim 55 of the '354 Patent, which reads in pertinent part, with the limitations pertinent to the decisive priority issue italicized:

> 55. A compact currency evaluation device for identifying the denomination of currency bills of different denominations comprising: a housing having a depth dimension, a width dimension and a height dimension within which said device is enclosed; *said depth dimension being about 5 times the smaller cross-sectional dimension of the smallest di-*

> *mensioned bill to be identified by said device; said width dimension being about 2 times the larger cross-sectional dimension of the smallest dimensioned bill to be identified by said device.*

A1371 (emphasis added).

The '354 Patent is a continuation of the '259 Patent that resulted from the '854 Application filed on March 7, 1995. In claiming priority from March 7, 1995, Cummins-Allison primarily relies upon Figures 1 and 19, depicted below, which appear identical in the '354 Patent and the '259 Patent. Figure 1 depicts "a perspective view of a currency scanning and counting machine embodying the present invention." A1338. Figure 19 "is an enlarged vertical section taken approximately through the center of the machine, but showing the various transport rolls in side elevation." *Id.*



*FIG. 1*

*Compare* A1279 *with* A4977.



FIG. 19

*Compare* A1299 *with* A4997.

Defendants-Appellants argue that Cummins-Allison cannot claim priority from the filing date of the '854 Application because its written description and drawings do not show or state that the currency evaluation device had the specific dimensions recited in Claim 55 and the figures are not explicitly drawn to scale.

As explained above, the JetScan 4062 was on sale in the United States as of November 1994, and Cummins-Allison appears to have admitted that the JetScan 4062 met all the limitations of Claim 55. Therefore, Claim 55's priority date is critical because if the '354 Patent is not entitled to the March 1995 priority date, then the JetScan 4062 anticipated Claim 55 of the '354 Patent.

> With regard to this priority date/anticipation issue, the jury was instructed:
>
> SBM and Amro can meet their burden of proving that an earlier application fails to satisfy the written description requirement

> for a particular claim (and thus establish that the claim is not entitled to an earlier effective filing date) by showing by clear and convincing evidence that the entirety of the specification of the earlier application would clearly indicate to a person of ordinary skill in the art that the invention described in that application is of a narrower scope than the invention of that particular claim.

A1227.

The jury found that Claim 55 of the '354 Patent was not anticipated by the JetScan 4062. However, the district court disagreed and granted JMOL. Specifically, the district court found that the '854 Application and '259 Patent do not describe or discuss the specific dimensions in Claim 55, and the figures contained therein do not show the dimensions. The district court stated that "patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." (citing, *inter alia*, *Hockerson-Halberstadt, Inc. v. Aria Gr. Int'l, Inc.,* 222 F.3d 951, 956 (Fed. Cir. 2000)). Cummins-Allison moved for reconsideration, and the district court denied the motion.

We disagree with the district court's reliance on *Hockerson-Halberstadt.* As long as a person of skill in the art could derive the claimed dimensions from the patent's disclosure, there is no additional requirement that the specification must explicitly disclose the precise proportions or particular sizes. The '354 Patent and the '854 Application share a common specification and contain several identical drawings. Claim 55 describes a "compact currency evaluation device" with a depth dimension of "about 5 times the smaller cross-sectional dimension of

the smallest dimensioned bill to be identified by said device" and a width dimension of about 2 times the larger cross-sectional dimension of the smallest dimensioned bill to be identified by said device. The figures of the '854 Application and '259 Patent could be dimensioned by a person having ordinary skill in the art based on statements in the written description. Specifically, the '259 Patent explains that Figure 1 shows a "currency discrimination system adapted to U.S. currency," Col. 16, lines 51-54,[6] and the distance between the axes of the two driven transport rolls (223 and 241) of Fig. 19 is "just short of the length of the narrow dimension of the currency bills." Col. 42, lines 59-66; *see also* col. 41, lines 35-37 ("the drive roll 223 is dimensioned so that the circumference of the outermost portions of the grooved surfaces is greater than the width W of a bill"); col. 56, lines 15-16 (discussing Fig. 47b and stating that the "preferred length for the linear array scanhead is about 6-7 inches (15cm-17cm)").

The jury found that Claim 55 was not invalid as anticipated by the JetScan 4062. In reaching this decision, the jurors had the '259 and '354 Patents, *inter alia*, and other evidence before them. In reviewing a jury verdict where the underlying facts are disputed, the court must "presume that the jury resolved the underlying factual disputes in favor of the verdict winner and leave those presumed findings undisturbed if they are supported by substantial evidence." *See Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1342 (Fed. Cir. 2011). Therefore, here we must presume that the jury reviewed and resolved issues concerning the dimensions from the specifications and figures contained therein as well as

---

[6]    U.S. bills are of standard dimensions.

consideration of other pertinent evidence presented at trial.

Because these examples of dimensions could be used to "scale" the relevant figures and deduce dimensions from them, the district court erred in concluding that Claim 55 was not entitled to the March 1995 priority date. Substantial evidence supported the jury's determination because a person having ordinary skill in the art could have deduced the dimensions from a review of the language in the specification and the drawings themselves. Therefore, the jury verdict should have been upheld, and we reverse.[7]

### III.

### CONCLUSION

For the foregoing reasons, we affirm the district court's holdings as to the '806 and '503 patents and uphold the damages award. However, we reverse the district court's grant of JMOL as to the invalidity by anticipation of Claim 55 of the '354 Patent.

**AFFIRMED-IN-PART, REVERSED-IN-PART**

### COSTS

No costs.

---

[7] In light of our holdings and the parties' agreement that the invalidity of the '354 and '456 patent claims did not alter the measure of damages, our reversal as to the issue on cross-appeal does not impact the damages award.